IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRIAN MARTIN, ] <br> ] <br> Plaintiff, ] <br> ] <br> vs. ] <br> ] <br> LAWSON STATE ] <br> COMMUNITY COLLEGE, and ] <br> LIEUTENANT ROBERT TATE ] <br> ] <br> Defendants. ] | CIVIL ACTION NO. <br> 2:15-CV-01851-KOB |

### MEMORANDUM OPINION

This matter is before the court on Defendants' Motion for Summary Judgment. (Doc. 21). Plaintiff Brian Martin sued Defendants Lawson State Community College and Lieutenant Robert Tate under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §§ 1981 and 1983. He alleges that he was removed from the work schedule as a police officer at Lawson State on the basis of his race. As explained below, the court finds that no genuine issue of material fact exists and Defendants are entitled to judgment as a matter of law. Therefore, the court will GRANT the motion.

### I. FACTUAL BACKGROUND

Plaintiff Brian Martin is a Caucasian police officer who has worked a variety of jobs—both full and part-time—providing law enforcement and security services for various entities. He worked full-time for the Pell City Police Department from October 2011, until the spring of 2015. And beginning on July 7, 2011, he supplemented those hours by working at Lawson State Community College.

1

Initially, Mr. Martin worked the 6 p.m. to 6 a.m. shift for Pell City. (Doc. 22 at 3). At the end of each shift, he would return to the office to debrief, and then depart the station at approximately 6:15 a.m. After leaving his Pell City shift, Mr. Martin would then drive approximately one hour to Lawson State to work his 7 a.m. to 3 p.m. shift. (*Id.* at 3–4). This scheduling conflict resulted in Mr. Martin consistently arriving late to his job at Lawson State. (Doc. 29 at 5).

During the majority of the time that Mr. Martin was employed at Lawson State, Chief Williams was the chief of the college's police force. Mr. Martin always called when he was going to arrive late for his shift at Lawson State, and he asserts that he and Chief Williams operated under this arrangement for nearly four years. Chief Williams resigned in February 2014, and was replaced by Lieutenant Robert Tate, a 21-year employee of Lawson State. (Doc. 22 at 2). At least initially, Mr. Martin enjoyed the same flexibility under Lieutenant Tate as he had while Chief Williams was in charge: he provided Lieutenant Tate with his availability, and Lieutenant Tate would place him on the schedule accordingly. (Doc. 29 at 11–12).

In March 2014, Mr. Martin began working two day shifts per week from 8:00 a.m. to 5:00 p.m. at the St. Clair County Sherriff's Department. (Doc. 22 at 4). This employment supplemented his full-time employment with Pell City and his part-time contract services with Lawson State. As a result, his availability to work for Lawson State decreased. (Doc. 23-2 at 17).

Then, in June 2014, Lieutenant Tate informed Mr. Martin that he was taking him off the schedule. (Doc. 29 at 6). Lieutenant Tate told Mr. Martin that the Lawson State administration wanted him removed from the payroll; other officers had complained that he frequently arrived late but was not reprimanded the same way they were; and the police department needed a regularly-scheduled employee. (Docs. 23-2 at 13; 29 at 6).

2

Lieutenant Tate also terminated at least two other officers in 2014. He fired Jady Pipes—the only other Caucasian officer working at Lawson State during Mr. Martin's time there—in late June 2014 (doc. 29 at 6; 30-2 at 2), and he fired Fredtonio Coleman, an African American, sometime between February and May 2014. (Docs. 29 at 4; 22 at 6; 23-1). The Defendants allege Lieutenant Tate fired Mr. Pipes over a uniform dispute, but Mr. Pipes' affidavit states that he was never provided with that reason. The parties do agree, however, that Lieutenant Tate fired Mr. Coleman for arriving late to work.

After terminating Mr. Martin, Lieutenant Tate increased the department's use of SanGuard Security, a company that provides Lawson State with extra unsworn officers to cover unfilled areas of the schedule when needed. (Doc. 22 at 6; 23-1 at 10). Lieutenant Tate had no control over the race of the officers that SanGuard provided, and did not know the officers' race until they arrived for work.

In October 2015, James Blanton replaced Lieutenant Tate as the Chief of the Lawson State Police Department. (Doc. 23-1 at 5). Chief Blanton hired eight police officers, only one of whom was white. (Docs. 29 at 7; 32-1 at 1–2). The officers were hired to begin working at Lawson State between January 2016 and October 2016. As of December 20, 2016, Lawson State was still using SanGuard Security to fill uncovered areas of its schedule. (Doc. 23-1 at 10).

## II. STANDARD OF REVIEW

When a district court reviews a motion for summary judgment, it must determine two things: whether any genuine issues of material fact exist, and whether the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

The court must "view the evidence presented through the prism of the substantive evidentiary burden" to determine whether the non-moving party presented sufficient evidence on

3

which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must not weigh the evidence and make credibility determinations because these decisions belong to a jury. *See id.* at 254.

Further, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

## III. ANALYSIS

Plaintiff Martin alleges that the Defendants Lawson State Community College and Lieutenant Tate of the Lawson State Police Department discriminated against him by terminating his employment as a contract security officer. He brings his claims against Lawson State pursuant to Title VII, and his claims against Lieutenant Tate under 42 U.S.C. § 1981 "through" § 1983 and the 14th Amendment. Mr. Martin contends the Defendants denied him the opportunity to work at Lawson State because he is Caucasian.

Race discrimination claims under Title VII, § 1981/1983, and the Equal Protection Clause are analyzed under the same analytical framework. *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009). Therefore, the court's analysis will apply to all claims. The essential element under each statute requires proof that the employer intentionally inflicted the adverse employment action because of the plaintiff's race. *See, e.g., Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005) (observing that disparate treatment claims based upon a plaintiff's race and "brought under Title VII, § 1981, and § 1983, all require proof of discriminatory intent.").

## A. Analysis of Martin's Claims under *McDonnell Douglas*

Mr. Martin provides no direct evidence of Lawson State's or Lieutenant Tate's discriminatory intent, so the court first applies the burden-shifting framework established in the *McDonnell Douglas* decision to analyze his claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, Mr. Martin may establish a prima facie reverse race discrimination claim by showing that "1) he is a member of a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).

If the plaintiff establishes a prima facie case, a presumption exists that his race motivated his employer to treat him unfavorably. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 (11th Cir. 2011). Then, the burden shifts to the employer to rebut the presumption with evidence that the employer acted for some legitimate, non-discriminatory reason. *Id.* If the employer is able to rebut the presumption of discrimination, then the burden shifts again to the plaintiff to show the employer's proffered reason is a pretext for unlawful discrimination. *Id.* at 1326.

In their brief supporting the motion for summary judgment, the Defendants focus their argument on the assertion that Mr. Martin is unable to establish that he was replaced by an individual outside his protected class or treated less favorably than a similarly-situated person outside his protected class, as well as Mr. Martin's inability to establish pretext. The court will address both alleged deficiencies.

### i.   *Element Four of* **McDonnell Douglas**

The Defendants first argue that Mr. Martin was not replaced by individuals of a different race. Rather, when Lieutenant Tate decided to remove Mr. Martin from the schedule, he chose to fill that void by increasing the use of a third-party security service (SanGuard). Also, because Lieutenant Tate simply replaced Mr. Martin with whomever SanGuard chose to send, Lieutenant Tate was unaware of the security officers' race until they arrived to work, and the officers' race was beyond his control. The Defendants argue, therefore, that Mr. Martin cannot show that the Defendants replaced him with someone outside his protected class because SanGuard unilaterally provided his replacements, regardless of their race.

The court agrees that Mr. Martin has failed to show that he was replaced by a member outside his protected class. SanGuard supplied Lawson State with contract officers of its own choosing.  In the absence of any evidence that the Defendants were able to select the officers on the basis of their race, no reasonable jury could find that the Defendants' decision to use SanGuard's officers gives rise to any inference of discriminatory intent regarding Mr. Martin's termination.

The court also finds no evidence that the Defendants treated Mr. Martin less favorably than a similarly-situated individual outside his protected class. Mr. Martin asserts that, aside from Mr. Coleman, Lieutenant Tate did not fire African American contract officers who arrived late for work. However, the court cannot simply overlook Mr. Coleman's termination. The very fact that Lieutenant Tate fired Mr. Coleman—an African American—for being late is quite significant. The Defendants fired both men because they were either unable or unwilling to arrive at work on time.

Mr. Martin also submitted the affidavit of Jady Pipes, which states that he "observed many African American officers had other police jobs and were late without it being an issue." (Doc. 30-2 at 3). However, Mr. Pipes' affidavit does not state whether he observed those officers arriving late while Chief Williams or Lieutenant Tate was acting as chief, nor does he provide their names or any other information showing how they were similarly situated to Mr. Martin. The absence of that evidence, coupled with Lieutenant Tate's firing of at least one African American contract officer for being late, prevents this court from concluding that Mr. Martin has shown that the Defendants treated him less favorably than the other officers who were African American.

Because Mr. Martin has failed to establish the fourth element of the *McDonnell Douglas* framework, he has not established a prima facie case so as to survive summary judgment on his Title VII and § 1981 claims. The court also finds, as explained below, that even if the information provided by Mr. Martin were sufficient to establish a prima facie case, his case would still fail because he is unable to establish that the Defendants' proffered reason for his termination is pretextual.

  *ii.*  ***Pretext***

When a plaintiff establishes his prima facie case under the *McDonnell Douglas* framework, the defendant "must articulate a legitimate, nondiscriminatory reason for the challenged action." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). Even if Mr. Martin had established a prima facie case, the court finds that the Defendants have done so by showing that Mr. Martin's availability to work at Lawson State became significantly reduced when he began working at the St. Clair County Sherriff's Department, and explaining

7

that his reduced availability created problems (scheduling problems and complaints from other officers) that induced Lieutenant Tate's decision to remove him from the schedule.

The Defendants have proffered a legitimate, nondiscriminatory reason for Mr. Martin's termination. Were Mr. Martin able to establish a prima facie case—which the court has determined that he is not—Mr. Martin would then bear the burden to proffer sufficient evidence to permit a reasonable factfinder to conclude that the Defendants' reason was "a pretext for discrimination." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030. The employee must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotation omitted). To show pretext, a plaintiff must provide "concrete evidence in the form of specific facts." *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009). "[C]onclusory allegations and assertions" will not suffice. *Id.*

In support of his pretext argument, Mr. Martin asserts that Lawson State's articulated reason for terminating him was inconsistent with their longstanding policy of allowing him to provide his dates of availability and then placing him on the work schedule accordingly. Mr. Martin also provides that while he had permission to arrive late, the African American officers and Lieutenant Tate had arrived late without permission and, unlike him, they were not terminated.

The court agrees with Mr. Martin that deviation from a policy or procedure may be evidence of pretext *if* the deviation occurred in a discriminatory manner. *See Walker v. Prudential Property and Cas. Ins. Co.*, 286 F.3d 1270, 1279 (11th Cir. 2002). However, at least two notable events occurred that reasonably explain why Lawson State's deviation from its longstanding policy of allowing Mr. Martin to make his own schedule and to arrive late was not based on racial discrimination: 1) the resignation of Chief Wilson and Lieutenant Tate's assumption of his position as acting chief; and, more significantly, 2) Mr. Martin's decreased availability to work because of his new employment at the St. Clair County Sherriff's Department. Because Mr. Martin does not rebut these explanations with concrete evidence, both of these occurrences provide a more likely reason for Mr. Martin's termination than does racial discrimination.

In an attempt to make such a rebuttal, Mr. Martin must show that a reasonable factfinder could find the Defendants' explanations unworthy of credence. *See Combs*, 106 F.3d at 1538. But Mr. Martin offers no such evidence. While he asserts that African American officers were not fired despite their late arrival to work, he does not provide any of the officers' names, any actual evidence that they arrived late, or any information regarding the circumstances surrounding their tardiness.

The court also notes two other problems with Mr. Martin's rebuttal. First, not only did Mr. Martin frequently arrive late, but he was often unavailable to be placed on the schedule at all. Mr. Martin has not provided any evidence disputing that his reduced availability distinguished him from the officers who simply arrived late. Second, the Defendants provide that Mr. Martin was not the only officer terminated for arriving late: Lieutenant Tate also terminated Fredtonio Coleman, an African American officer, just a few months before Mr.

Martin was removed from the schedule. That fact establishes an inference that Lieutenant Tate was more interested in his officers' reliability than their race.

For the foregoing reasons, the court finds that Mr. Martin has not offered concrete evidence in the form of specific facts that the Defendants' legitimate business reasons for removing Mr. Martin from the schedule were pretext for racial discrimination. He has also failed to show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997). Therefore, even if the court found that Mr. Martin established a prima facie case of reverse race discrimination, his claims would still fail under the *McDonnell Douglas* framework.

**B. Analysis of Martin's Claims under the "Convincing Mosaic" Theory**

In addition to Mr. Martin's attempt to survive summary judgment under the *McDonnell Douglas* framework, he also cites the decision of *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011); he quotes its language that "[t]he plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." The Eleventh Circuit explained that the plaintiff does so by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* at 1328.

Mr. Martin argues the following allegations reveal intentional discrimination: 1) the Defendants simultaneously removed the only two Caucasian officers on their police force (Mr. Pipes and Plaintiff Martin) in June 2014; 2) the two Caucasian officers were the only two officers removed from the schedule at that specific time; 3) the removal of Mr. Pipes and Mr. Martin left the department with at least ten African American officers, and no Caucasian officers

at that specific time; and 4) the Defendants only hired African Americans after firing the Caucasian officers. However, these individual tiles of evidence, even when considered in the conglomerate, fail to create a convincing mosaic of discrimination.

To begin, the court is unpersuaded that the Defendants' decision to terminate Lawson State's only two Caucasian police officers gives rise to an inference that the Defendants discriminated against Mr. Martin on the basis of his race. Without more evidence, Mr. Martin has not shown anything more than a coincidence. *See, e.g., Holmes v. Jefferson Cty. Sch. Dist.*, 657 F. Appx 874, 876 (11th Cir. 2016) (affirming district court's holding that employer's termination of two African American employees and retention of only a single Caucasian in its IT department was too small a sample size to show discriminatory intent, even though employer replaced both African Americans with Caucasians). And the court is even less inclined to find an inference of discrimination on this basis considering Lieutenant Tate's termination of another officer—who was African American—for arriving late to his shifts just a few months before terminating Mr. Martin.

Lieutenant Tate's firing of the African American officer in the spring of 2014 also significantly hamstrings Mr. Martin's second argument, which addresses the timing of the firings. He argues that the Defendants' decision to fire its only two Caucasian officers in the same month raises an inference or question of fact regarding discriminatory intent. However, while Mr. Martin and Mr. Pipes were the only two officers terminated in June 2014, they were not the only two officers fired within a span of just a few months. Again, without more, Mr. Martin has not demonstrated that the termination of Mr. Martin and Mr. Pipes in the same month occurred because of discriminatory intent. Thus, the court does not find the Defendants' decision

to fire its only two Caucasian employees in the same month sufficient to raise an inference of discriminatory intent.

Mr. Martin's third and fourth arguments that the Defendants did not employ any Caucasian officers and only hired African Americans after Mr. Martin's termination are problematic for two reasons. First, the assertion is simply incorrect. Chief Blanton hired Officer Lee Powell, a Caucasian, in 2016—after Mr. Martin was terminated. (Doc. 32-1). Officer Powell was still employed at Lawson State as of June 2017.

Second, following Mr. Martin's termination, Lieutenant Tate relied on a third-party security service to provide contract officers to fill the vacancies on the schedule. He did so throughout his time as acting chief, and Lawson State was still using the service as of Lieutenant Tate's deposition in December 2016. Lieutenant Tate's inability to know or control the race of the officers that the service provided negates any inference that he terminated Mr. Martin because he preferred African Americans.

Mr. Martin's burden is to present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). None of the circumstantial evidence he has provided suffices to overcome the Defendants' proffered reasons for removing Mr. Martin from the Lawson State Police Department's schedule. Perhaps his termination was unfair. Perhaps it was inconsistent with the parties' prior arrangement. But Mr. Martin has not provided sufficient evidence that it was discriminatory, especially in light of his own decision to work more in St. Clair County, which reduced the amount of time he was available to work at Lawson State. Therefore, the court will GRANT the Defendants' motion for summary judgment.

## III. CONCLUSION

Mr. Martin failed to present sufficient evidence to establish a prima facie case of reverse racial discrimination against Lawson State and Lieutenant Tate. He has also failed to create a convincing mosaic of circumstantial evidence that creates a triable issue concerning the Defendants' discriminatory intent. Therefore, the court will GRANT the Defendant's motion for summary judgment. The court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 27th day of July, 2018.

*/s/ Karon O. Bowdre*
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE